UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 08-115-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CALVIN LYNN MANIS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Calvin Manis' motion to be released on bond pending his appeal pursuant to 18 U.S.C. § 3143(b). [Record No. 18] The United States opposes the motion. [Record No. 21] Having reviewed the relevant materials, the Court concludes that the Defendant has not raised a substantial question of law likely to result in a reduced sentence. Accordingly, the Defendant's motion will be denied.

**I.    Relevant Facts and Procedural History**

Defendant Manis is a pharmacist and federally-licensed firearms dealer. On October 15, 2008, Manis entered a plea to a one-count information charging him with failing to properly maintain records regarding the importation, production, shipment, receipt, sale, and other disposition of firearms at his place of business in violation of 18 U.S.C. §§ 922(m) and 924(a)(3)(B). This misdemeanor charge carried a potential penalty of not more than one year imprisonment, a fine of not more than $100,000, and a term of supervised release of not more than one year. Prior to entering a plea to this charge, Manis had entered a guilty plea to another misdemeanor charge of

causing certain prescription drugs to become misbranded in violation of 21 U.S.C. § 331(k). He was sentenced on the misbranding charge on October 6, 2008, to a term or probation of three years.

Manis' guilty pleas to these charges followed his indictment in February 2008 to 23 counts charging the improper sale of prescription samples (one count), selling a firearm to a prohibited person (two counts), being a licensed firearms dealer who failed to report multiple sales of handguns (four counts), being a licensed firearms dealer who failed to maintain records or transactions at his place of business (one count), being a licensed firearms dealer who failed to note purchase information in his business records (three counts), and knowingly making a false statement or representation on AFT Form 4473 (twelve counts).[1] In exchange for Manis entering a guilty plea to the misdemeanor charge of failing to maintain acquisition and disposition records of firearm transactions at his place of business, the United States agreed to dismiss the felony charges originally brought in the matter captioned *United States v. Calvin Lynn Manis*, U.S. Dist. Ct., E.D. Ky., Southern Division at London, Criminal Action No. 6: 08-18-DCR and Criminal Action No. 6: 08-18-S-DCR. [*See* Record No. 10; Plea Agreement, ¶ 1.]

During the Defendant's rearraignment, the parties represented and agreed that the United States could prove the following facts in support of Manis' guilty plea:

> (a) On or about September 8, 2006, in Knox County, in the Eastern District of Kentucky a search warrant was executed on the business of the Defendant.

---

[1] *See United States v. Calvin Lynn Manis*, U.S. Dist. Ct., E.D. Ky., Southern Division at London, Criminal Action No. 6: 08-18-DCR. This indictment was returned on February 29, 2008. On August 27, 2008, the indictment was amended to eliminate the count charging the sale of prescription drug samples and to add a count of possession of a firearm not registered to the Defendant in violation of 26 U.S.C. § 5861(d). The maximum statutory term of imprisonment for the felony counts included in the superseding indictment ranged from not more than ten years imprisonment for counts one through three to not more than five years imprisonment for counts four through twenty-three. This amendment resulted, in part, from Manis entering a guilty plea to the misdemeanor charge of misbranding prescription drugs. *See United States v. Calvin Lynn Manis*, U.S. Dist. Ct., E.D.Ky., Southern Division at London, Criminal Action No. 6: 08-63-DCR.

> During the execution of the search warrant the Defendant admitted that his Firearm Acquisition and Disposition book was not at his place of business. On this same date the Defendant sent an employee to his residence to retrieve the records to provide to law enforcement.
>
> (b) The Defendant acknowledges that federal law requires that a federal firearm licensee keep aforementioned firearm records at his place of business and he did not have them at his place of business. The Defendant admits that he is and was at the time of the search warrant a federal firearm licensee.

*Id.* Other than the reference that the United States intended to move the Court to dismiss London Criminal Action No. 6: 08-18-DCR and London Criminal Action No. 6: 08-18-S-DCR at the time of the sentencing hearing, the parties did not address any of the facts relevant to the pending felony charges in the Plea Agreement.

During the sentencing hearing, the United States presented testimony and other evidence supporting the felony charges contained in London Criminal Action No. 6: 08-18-DCR and London Criminal No. 6: 08-18-S-DCR. This testimony was presented as evidence of relevant conduct supporting the offense level calculations outlined in the Presentence Investigation Report ("PSR") prepared by the United States Probation Office. Specifically, the PSR applied a base offense level of 14 under United States Sentencing Guideline ("U.S.S.G.") § 2K2.1(b)(7).[2] In addition, the PSR included an increase of six levels under U.S.S.G. § 2K2.1(b)(1) (C) based upon the determination that the offense involved between 25 and 99 firearms. Following a three level reduction for acceptance of responsibility, the guideline range of imprisonment was recommended to be 24 to 30 months. However, because the statutory maximum penalty for the offense of conviction was twelve

---

[2] This section provides that "[i]f a recordkeeping offense reflected an effort to conceal a substantive offense involving firearms or ammunition, increase to the offense level for the substantive offense. Here, the base offense level for a violation of 18 U.S.C. § 922(d) (*i.e.*, sale of a firearm to a prohibited person) is 14 under U.S.S.G. § 2K2.1(a)(6).

months, the statutory maximum became the guideline range. *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.")

At the outset of the sentencing hearing, counsel for Defendant Manis acknowledged that the Court could consider relevant conduct in determining the appropriate guideline range under the United States Sentencing Guidelines. However, counsel expressed an equitable objection to the use of such relevant conduct under circumstances in which the underlying charges pertaining to the specific conduct were being dismissed. Additionally, counsel objected to the Court considering information originating from a source[3] that the United States found to be less than credible. In summarizing his objections, counsel stated:

> MR. LUNDY: . . . I know that the Court can consider any information as long as it has sufficient indicia of reliability to support it probable accuracy. It bothers me, it bothers my client, to have this multicount indictment. The United States won't dismiss his – we have pled guilty to one misdemeanor and then they want to come back and use all this to raise the guidelines way up. And I know it's probably not the law, but I almost think that the United States should be estopped to do that. I've set out in our objections me and Mr. Crabtree, that this guy, William Phelps[4] [sic], that the Court sentenced, I pointed out to Mr. Chittum, I think that he's the one that said he didn't believe anything he told him at times he'd interviewed him. And basically all these things are, they go back to William Phelps [sic], whose wife bought firearms from Mr. Manis and did so under the statement that she was building up a collection for her son.

[Record No. 20; Transcript of 1/5/09 Sentencing Hearing, pp. 3-4]

---

[3] The source, William Phipps, was indicted and convicted in *United States v. Phipps*, U.S. Dist. Ct., E.D.Ky., Southern Division at London, Criminal Action No. 6: 06-112-DCR. On May 23, 2007, Phipps was sentenced to a term of imprisonment of 120 months following his conviction for being a felon in possession of firearms. Phipps obtained many of the firearms he possessed from Defendant Manis as a result of a series of straw purchases using his wife, Barbara Phipps.

[4] William Phillips is incorrectly identified throughout the transcript of the sentencing hearing as William Phipps and William or Willie Phelps.

Before receiving testimony and other evidence relating the Defendant's objections to the PSR, the Court advised the parties of the Sixth Circuit's recent *en banc* decision in *United States v. Roger White*, 2008 U.S. App. LEXIS 26095 (6th Cir., Dec. 24, 2008) (upholding the use of acquitted conduct in calculating a defendant's guideline range of imprisonment). [*Id.* at pp. 6-7 and 89] While counsel for Manis believed that the holding was troubling and ultimately would be addressed by the United States Supreme Court, counsel for the United States asserted that the facts presented here merely involved relevant conduct under U.S.S.G. § 1B1.3(a)(2), as opposed to being similar to acquitted conduct under *White, id.*

**II.     Testimony and Evidence Presented During the Sentencing Hearing**

The United States presented the testimony of Thomas Chittum, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and Thomas Black, a lay witness who had purchased a number of firearms through William Phillips, during the January 5, 2009, sentencing hearing. [Record No. 20] In addition, thirteen exhibits were offered and admitted for the Court's consideration. Through the testimony of Special Agent Chittum, the United States established that Defendant Manis has sold approximately 41 firearms to Phillips, a felon, using his wife has a straw purchaser. Special Agent Chittum's investigation revealed that, around 2000, Phillips had attempted to purchase a firearm legitimately through a pawn shop located in Corbin, Kentucky. However, after the background check revealed his felony conviction, Phillips had his wife fill-out paperwork for later purchases from Defendant Manis. Although Special Agent Chittum did not believe that Phillips provided truthful or accurate statements concerning all aspects of his investigation, he was able to confirm that Manis knew Phillips was a felon and engaged in straw purchases to transfer numerous weapons to him. Special Agent Chittum testified that,

> A. [SA Chittum]  He was denied because he was a convicted felon.  Mr. Phipps [sic] knew that he couldn't pass a background check again, so he said that his wife did the paperwork for him.  He hemmed and hawed some and said, well, sometimes she bought them as gifts, but eventually acquiesced and said, no, she basically does whatever I tell her and whenever I want a gun, she goes and fills out the paperwork for it.  And he told me that he and she did that with Mr. Manis' knowledge and consent.
>
> Q.  And at any point, did Mr. Phipps [sic] relay to you whether or not he had informed Mr. Manis about this NICS denial?
>
> A.  Yes, he told me that he had. . . .  He told me that he told Mr. Manis that he had tried to purchase a firearm and had been denied by the NICS background check and he said he thought it was because of criminal charges he had faced in federal court.  Mr. Manis suggested that Phipps [sic] have his record expunged, to take it off his record.  In fact, Mr. Phipps [sic] did try and have his record expunged here in federal court, it was denied.  But he continued to purchase firearms through his wife rather than attempt another background check.

[Record No. 20, pp. 15-16]

Special Agent Chittum subsequently obtained a search warrant for Defendant Manis' business, Parkway Pharmacy.  During the search of the Pharmacy, Special Agent Chittum discovered the affidavit he had prepared in connection with an earlier search of Phillips' home. [*Id.* at 20] And when questioned by Special Agent Chittum, Manis admitted that he had sold a number of firearms to Phillips, knowing that he was a convicted felon.

> A. [SA Chittum]  When I interviewed him, he said that he had known both of them [*i.e.*, Phillips and Kenny Sizemore] for a long time, admitted that they came in there and got firearms.  He said that he believed that maybe about ten or so of the guns had been gifts for the Phipps [sic] son, Kendall, but that he knew that most of them were not and that it was them coming in and getting them.  He admitted that Phipps [sic] had told him that he [*i.e.*, Phillips] had once been denied on a NICS background check.
>
> \* \* \* \* \*
>
> Q.  And did Mr. Manis confirm to you that he, indeed, sold Barbara Phipps [sic] firearms knowing that the actual purchaser or the person coming in and ordering the gun, the person paying for the gun, was actually William Phipps [sic]?

> A. Yes. But to say that he sold them to Barbara Phipps [sic] I think overstates it. He says that Barbara filled out the paperwork but that Phipps [sic] would come in and pick them out, that on occasion Phipps came in and picked them up himself, even though Barbara had done the paperwork.
>
> Q. And did Mr. Manis confirm to you that William Phipps [sic] always paid for the firearms?
>
> A. Yes, and the he required him to pay up front because he was afraid that he would not get paid.
>
> Q. And did Mr. Manis confirm to you that William Phipps [sic] would tell Manis what type of firearm he would like to purchase and then Manis would order the specific firearm?
>
> A. Yes. And Phipps [sic] told me the same thing, that Mr. Manis's business was essentially special order. Mr. Manis told me the same thing, that he didn't maintain an inventory but rather ordered firearms on an as-needed basis.

[Record No. 20, pp. 20-22][5] Special Agent Chittum also testified that, during his interview of the Defendant, Manis admitted that he had sold a firearm to the wife of another person, Troy Golden, after Golden had been denied when attempting a purchase due to his felon status. This testimony and business records confirmed to Special Agent Chittum that Defendant Manis had engaged in a number of straw sales to convicted felons. [*Id.* at 22-23][6]

---

[5] Special Agent Chittum testified that his review Manis' records indicated that, between April 28, 2000, and October 10, 2005, 41 firearms were sold to Barbara Phillips. Further, his records indicated that he should have had an additional 34 firearms in his inventory. However, these weapons were not found. [*See* Record No. 20, pp. 27, 29.]

[6] The United States also presented testimony and evidence that Defendant Manis had illegally possessed a MAC-10 machine gun. [*See* Record No. 20, pp. 35-45] Further, through Gary Black, the United States offered evidence that William Phillips had sold guns obtained from Manis while holding himself out as a federally-licensed firearms dealer. [*See* Record No., pp. 61-66.] The United States offered this evidence under 18 U.S.C. § 3553.

### III.     Analysis

The Defendant's motion is filed under the provisions of Rule 46(c) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3143(b)(1).  The statutory section provides as follows:

> Except as provided in paragraph (2), the judicial officer shall order that the person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained unless the judicial officer finds –
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
>
>> (i)  reversal,
>> (ii) an order for a new trial,
>> (iii) a sentence that does not include a term of imprisonment, or
>> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142 (b) or (c) of this title, except that in the circumstances described in subparagraphs (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

18 U.S.C. 3143(b)(1).

Manis argues that, if he is released on bond while his appeal is pending, he is not likely to flee or pose a danger to any other person or the community.  [Record No. 19, pp. 2-4]  He spends little time, however, focusing on the primary issue: whether his appeal raises an issue that will likely result in a reduced sentence.[7]

---

[7]     Manis asserts at page four of his supporting memorandum that, "this appeal raises a substantial question of law likely to result in a reduced sentence.  This appeal presents the issue of whether the Court can

In response, the United States contends that Manis' appeal does not raise a substantial question of law or fact that is likely to result in a reversal of this Court's sentence, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence. [Record No. 21] Citing Application Note 9 to U.S.S.G. 2K2.1, the United States argues that the Defendant's offense level was correctly calculated based on the fact that he committed the offenses to conceal the sale of firearms to a prohibited person in violation of 18 U.S.C. 922(d). Further, the offense was committed, in part to conceal the fact that 41 firearms were sold to a prohibited person. Finally, the government cites *United States v. White*, 2008 U.S.App. LEXIS 26095 (6th Cir., Dec. 24, 2008), in support of the proposition that the sentencing court may consider acquitted conduct to enhance a sentence under the United States Sentencing Guidelines as long as the resulting sentence does not exceed the statutory maximum sentence. [Record No. 21, p. 2]

In the present case, the Defendant's sales to prohibited persons constitute relevant conduct under U.S.S.G. 1B1.3 and relevant evidence under 18 U.S.C. § 3553. Further, the evidence presented by the United States related is relevant to determining the correct offense level and the relevant number of firearms (Specific Offense Characteristics: U.S.S.G. § 2K2.1(b)(1)). In fact, the Defendants did not argue to the contrary. Thus, to accept the Defendant's argument, the Court must conclude that there is a reasonable likelihood that the Sixth Circuit will decline to consider relevant conduct in determining the correct sentencing guideline range. Further, even if the relevant conduct provision of the United States Sentencing Guidelines is ignored, if the Defendant is to prevail on his

---

consider relevant conduct arising out of charges contained in an indictment that were dismissed by the Court pursuant to a plea agreement with the United States Attorney's office. Finally, if Mr. Manis is not released pending appeal, it is likely that he will have completed serving the sentence by the time the appellate court rules on the case." Manis fails to cite any supporting case law or provision of the United States Sentencing Guidelines in making these assertions.

motion, the Court must conclude that the Sixth Circuit would reverse the result reached in an *en banc* holding slightly over one month ago. Finally, the Court would be required to ignore relevant evidence under 18 U.S.C. § 3553. Under the circumstances of this case, the undersigned cannot reach any of the conclusions urged by Manis.

The Defendant has not claimed that the guideline range calculated by the Court was incorrect. However, the Court has again reviewed the testimony and other evidence in connection with the instant motion to confirm that no error occurred in correctly calculating this range. Further, the Defendant has conceded that the Court may consider the testimony and other evidence presented under 18 U.S.C. § 3553. Consideration of this evidence in light of the factors outlined under § 3553(a)(1) compels a sentence of twelve months for all of the reasons outlined at the conclusion of the sentencing hearing. [Record No. 20, pp. 84-87]

In summary, although Defendant Manis has a number of positive characteristics, those characteristics are *far* outweighed by the fact that he used his position as a federally-licensed firearms dealer to knowingly transfer more than forty weapons to convicted felons. Due to the knowledge Manis possessed and the number of firearms transferred, he was sentenced to his guideline range which was reduced from 24 to 30 months to 12 months – the statutory maximum term of imprisonment for his misdemeanor conviction. The evidence presented by the United States in support of the Court's findings far exceeds the preponderance of evidence standard required under the relevant provisions of the United States Sentencing Guidelines and 18 U.S.C. § 3553.

### IV.     Conclusion

Defendant Manis has not raised a substantial question of law likely to result in a reduced sentence. Based on the foregoing analysis, it is hereby

**ORDERED** that the Defendant's motion for release pending appeal [Record No. 18] is **DENIED**.

This 2nd day of February, 2009.



Signed By:
*Danny C. Reeves* DCR
United States District Judge